UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

CALVIN SEABROOK,

                          Plaintiff,

      -v-

THE CITY OF NEW YORK, DEPUTY ELAINE
BARRETT, DEPUTY JOSEPH RUSSO,
DEPUTY ARTHUR RUGGIERO, CAPTAIN
SHARON BENDER, CAPTAIN CHUNKEUNG
LEE, CAPTAIN DOUGLAS MITCHELL,
CAPTAIN MICHAEL RICHARDS, C.O. ELLIS,
C.O. GARCIA, C.O. HUTCHINSON, C.O.
JACOBS, WARDEN NEWTON,

                           Defendants.

13-CV-6620 (JPO)

OPINION AND ORDER

-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Calvin Seabrook ("Seabrook" or "Plaintiff"), proceeding pro se, brings this action alleging that he was subjected to unconstitutional conditions of confinement while he was in custody at the Anna M. Kross Center ("AMKC") on Rikers Island. Seabrook's lawsuit names various correctional officers and the City of New York (collectively, "Defendants").[1] Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted, and Seabrook is granted leave to file a second amended complaint.

---

[1] It is unclear if Seabrook's amended complaint intends to name as a defendant an entity identified as Compliance Consultants of New York. (*See* Dkt. No. 27 ("Am. Compl.") at 4.) The amended complaint contains no allegation with regard to the role of this entity or how it is responsible for conditions at AMKC. Accordingly, any claim as to this defendant is dismissed for failure to state a claim. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). However, Seabrook may amend his claim as to Compliance Consultants of New York if his amended pleading explains its alleged responsibility for violating his rights.

1

I.  Background[2]

    A.  Facts

According to the amended complaint, Seabrook was held in intake sections, also called holding pens or "bullpens," at the AMKC over several days in 2012.[3] (Am. Compl. at 5.) The holding pen, where incoming detainees are taken for processing, is built for approximately 15 persons, but at least one of the areas is "always overcrowded with detainees," in the range of 20 to 30. (*Id.*) Seabrook asserts that detainees are subject to disease transmission, insect infestation, a lack of ventilation and drinking water, and non-working toilets. (*Id.*) Additionally, detainees "are forced to sleep on a filthy concrete floor covered with broken floor tiles for up to 5 days at a time," food and water are served in an unsanitary fashion, and it may take three days to see medical staff. (*Id.* (capitalization altered).) Finally, Seabrook alleges, "Should a Detainee need any type of assistance from an Officer[, the inmate] WILL subject himself to hum[i]li[]ation[,] Ha[]rassment, and in some cases A Vicious assault." (*Id.* (capitalization in original).)

Seabrook alleges that the conditions in the AMKC intake section have caused him various psychological injuries for which he has sought treatment and medication, including post-traumatic stress disorder, fear of crowded places, and anxiety disorder. (*Id.* at 5-6.) He asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments and seeks $5 million in damages for pain and suffering, as well as the costs of "mental health care" and

---

[2] The following facts are taken from the allegations in the amended complaint, which are accepted as true at this stage, and from other submissions in connection with the instant motion.

[3] The precise dates on which the alleged events occurred are subject to question. The amended complaint states in one instance that the dates were "February 3, 4, & 5" (Am. Compl. at 2), in another place on "February 4th [sic], 3rd, 4th, 5th" (*id.* at 3), and yet another place on "February 28, 29, March 1st 2012 from 4:00 pm 2/27/12 until 4:00 AM, 3-1-2012" (*id.* at 10). In a letter filed on April 1, 2014, Seabrook stated that he was arrested on February 2, 2012, and the "correct dates" for his claims are February 3 through February 7, 2012. (Dkt. No. 18.)

2

"future medical care." (*Id.* at 8.) Construed liberally, Seabrook's complaint also seeks an injunction requiring AMKC to "immediately stop the overcrowding of 'bullpens,'" to "house detainees within 48 hours as prescribed by law," and to give detainees "medical treatment in a timely manner," "sanitary trays of food," "sanitary drinking cups," and "adequate restroom facilities." (*Id.*)

Seabrook alleges that he filed a grievance at AMKC concerning conditions in the intake section, but received no reply. (*Id.* at 7.) In response to the complaint form's query concerning steps taken to appeal to "the highest level of the grievance process," Seabrook does not allege that any further steps were taken after the initial filing of a grievance. (*Id.*) Seabrook's complaint does state that he "will forward a copy of [his] unanswered grievance to the inspector general." (*Id.* at 8.)

### B.     Procedural History

Seabrook filed this action on September 16, 2013. (Dkt. Nos. 1-2.) Defendants moved to dismiss on April 7, 2014. (Dkt. No. 21.) Subsequently, pursuant to an order of this Court, the City of New York filed a letter naming certain Defendants who were unidentified in Seabrook's initial complaint. (Dkt. No. 23.) Seabrook filed an amended complaint ("complaint" or "amended complaint") on June 2, 2014. (Am. Compl.) Defendants requested that their motion to dismiss Seabrook's initial pleadings be deemed a response to the amended complaint. (Dkt. No. 28.) Seabrook responded by letter received on September 26, 2014. (Dkt. No. 33 ("Seabrook Br.").). Defendants' reply memorandum was docketed on October 8, 2014. (Dkt. No. 34.) Seabrook filed a subsequent letter, dated October 31, 2014, which the Court accepts as a surreply memorandum. (Dkt. No. 36 ("Seabrook Reply")).

II.     Discussion

   A.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010). A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

A complaint filed pro se "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted). "[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). However, a pro se litigant must nonetheless "plead facts sufficient to state a claim to relief that is plausible on its face." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

   B.     Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), an action regarding conditions of confinement in a correctional facility cannot be brought until the exhaustion of "such

4

administrative remedies as are available." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations and internal quotation marks omitted).

"In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "[I]f non-exhaustion is apparent from the face of the [complaint], a Rule 12(b)(6) motion is the proper vehicle to raise it as an affirmative defense." *Martin v. City of New York*, No. 11 Civ. 600 (PKC) (RLE), 2012 WL 1392648, at *5 (S.D.N.Y. Apr. 20, 2012) (internal quotation marks omitted).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96. However, the Second Circuit has recognized three categories of "caveats" to the exhaustion requirement, where "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply

with the exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

### 1. Claims Concerning Conditions of Confinement

Detainees who wish to challenge their conditions of confinement at AMKC are required to comply with the New York City Department of Correction's multi-part Inmate Grievance Resolution Program ("IGRP").[4] *See Mamon v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 8055 (NRB), 2012 WL 260287, at *3 (S.D.N.Y. Jan. 27, 2012). That process proceeds as follows:

> After submitting an initial grievance form to the Inmate Grievance Resolution Committee ("IGRC"), the IGRC has five days to informally resolve the issue or to review the grievance. If the IGRC does not reach a decision, does not respond within five days, or if the inmate does not consent to the proposed resolution, the grievant may request a formal hearing in front of the IGRC. Thus, the burden is on the grievant to seek a hearing if he does not hear a response from the IGRC. At that point, the IGRC must issue a written decision. If the grievant is unhappy with it, he may appeal the decision to the commanding officer of the facility or his designee, then to the Central Office Review Committee, and finally to the New York City Board of Correction ("BOC"). Only after these steps are followed can an inmate file suit in the district court.

*Johnson v. Schriro*, No. 12 Civ. 7239 (WHP), 2013 WL 5718474, at *3 (S.D.N.Y. Oct. 15, 2013) (citations and internal quotation marks omitted). "The IGRP procedures also advise that 'if you do not receive a response to your grievance at any step of the Grievance Procedure within the time period required[,] you may proceed to the next step of the Grievance Procedure.'" *Rivera v. New York City*, No. 12 Civ. 760 (DLC), 2013 WL 6061759, at *2 (S.D.N.Y. Nov. 18, 2013) (internal brackets and ellipsis omitted).

---

[4] The Court takes judicial notice of the IGRP, as courts regularly do in this district. *See, e.g., Myers v. City of New York*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *4 n.6 (S.D.N.Y. Aug. 29, 2012). The IGRP directive that was in effect during the applicable time period is available on the Department of Correction's website. *See* N.Y.C. Dep't of Correction, Directive 3375R-A (effective Mar. 13, 2008 to Sept. 9, 2012), *available at* http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.

It is apparent from the face of the amended complaint that Seabrook failed to exhaust administrative remedies available for his conditions of confinement claims. He filed only an initial grievance and did not request a formal hearing or otherwise continue through the IGRP appeals process. While the complaint asserts that Seabrook received no reply or decision in response to his initial grievance, "[i]t is well settled that an inmate who receives no response to his grievance must continue with the next steps in the grievance process." *Tyler v. Argo*, No. 14 Civ. 2049 (CM) (DCF), 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014); *see also Rivera*, 2013 WL 6061759, at *6 ("Because the PLRA imposes on an inmate the duty to exhaust all available remedies, and the IGRP makes an appeal available, an inmate must file an appeal if he wishes to properly exhaust his administrative remedies even if no action has been taken on a grievance at the first level.").

The applicable case law "does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not appeal to the highest available level of administrative review and provides no justifiable explanation for his failure to do so." *George v. Morrison*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *4 & n.52 (S.D.N.Y. June 11, 2007) (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)). Seabrook states only that he complied with the first step of the IGRP procedure by filing a grievance "at the grievance office" of AMKC. (Am. Compl. at 7.) And while he states that he "will forward a copy of [his] unanswered grievance to the inspector general" (*id.* at 8), this "does not constitute a step in the IGRP administrative process," *Jones v. Rikers Island Care Custody*, No. 07 Civ. 10414 (RWS), 2010 WL 148616, at *2 (S.D.N.Y. Jan. 14, 2010) (dismissing complaint for failure to exhaust where plaintiff had contacted the Inspector General's office). Accordingly, Seabrook's conditions of confinement claims are dismissed without prejudice.

7

However, "[d]istrict courts have consistently held that an administrative remedy is not available to an inmate who is not informed of the grievance procedure." *Rivera*, 2013 WL 6061759, at *4 (citing cases). If Seabrook pleads a permissible justification for his failure to exhaust in an amended complaint, this may revive his claims. Otherwise, if Seabrook wishes to proceed with his case, he must file a new action after exhausting the applicable grievance mechanisms.

### 2. Assault and Harassment Claims

Assault and harassment claims, unlike the other claims, are excluded from the IGRP process. *See Tartt v. City of New York*, No. 12-CV-5405 (VEC), 2014 WL 3702594, at *3 (S.D.N.Y. July 16, 2014). Regardless of whether there is any administrative grievance process that does cover assault and harassment claims at AMKC, however—an issue that the City has not briefed—Seabrook's assault and harassment claims fail on other grounds.

The amended complaint states only, as a general matter, that detainees who "need any type of assistance" from AMKC staff will be subjected to humiliation, harassment, and sometimes assault. (Am. Compl. at 5.) The complaint does not allege that Seabrook suffered such harm, however, and a plaintiff proceeding pro se can represent only himself. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). Furthermore, without an allegation that Seabrook himself was injured in connection with his claims of assault and harassment, he lacks standing to raise them. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff herself is . . . generally an essential component of Article III standing.").

In his opposition to the motion, Seabrook claims for the first time that he was "subjected to confrontation(s), abuse and assault(s) by other prisoner(s)." (Seabrook Br. at 2 (parentheses in

original).) However, such a claim lies only if a plaintiff alleges "deliberate indifference"—that is, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Here, Seabrook makes no allegation that "corrections officers knew of and disregarded a particular risk to his safety." *Morgan v. City of New York*, 12 Civ. 282 (ALC) (RLE), 2014 WL 3952917, at *3 (S.D.N.Y. Aug. 12, 2014). Accordingly, the claims premised on assault and harassment are also dismissed.

### C. Plaintiff's Arguments

In his opposition to the motion to dismiss, Seabrook requests the entry of a default judgment. (Seabrook Br. at 1.) Because there is no ground for a default, the request is denied.

In his surreply memorandum, Seabrook claims that he was deprived of necessary medications by AMKC staff and cites other sources of law (including the Americans with Disabilities Act and state health privacy laws) that he claims were breached by the conditions of confinement at AMKC. (Seabrook Reply at 2.) However, he does not explain why these other claims, also arising from conditions at the facility, would not also be barred by his failure to exhaust administrative remedies. *See, e.g., Valentine v. Lindsay*, No. 10 Civ. 868 (JG) (JMA), 2011 WL 3648261, at *7 n.16 (E.D.N.Y. Aug. 17, 2011) (noting that "ADA violations are subject to the PLRA" and its exhaustion requirement).

### D. Damages

A plaintiff confined in a jail cannot bring a federal civil rights action for compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002). However, § 1997e(e) "does not prevent a prisoner from obtaining injunctive or

9

declaratory relief," nor does it "limit the availability of nominal damages for the violation of a constitutional right or of punitive damages." *Thompson*, 284 F.3d at 418. The amended complaint does not plausibly allege any physical injury. *See Brown v. Doe*, No. 13 Civ. 8409 (ER), 2014 WL 5461815, at *9-10 (S.D.N.Y. Oct. 28, 2014) (dismissing prisoner's request for compensatory damages for "mental anguish"). Thus, even if Seabrook files an amended complaint, the Court notes that his complaint's allegations would not permit his request for $5 million in compensatory damages; only a request for other types of damages or injunctive relief would survive.

### E. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be granted "freely." Fed. R. Civ. P. 15(a)(2). Furthermore, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted). Because the Court concludes that Seabrook could amend his complaint to state a valid claim to relief, leave to amend is granted.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to file a second amended complaint. An amended complaint form is attached to this order. If Plaintiff wishes to file a second amended complaint, he is directed to send it by mail to the Pro Se Office of this Court, 500 Pearl Street, Room 200, New York, New York 10007, by January 15, 2015.

The Clerk of the Court is directed to terminate the motion at docket number 21.

SO ORDERED.

Dated: December 16, 2014
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY